[Cite as *State v. D.W.*, 2019-Ohio-2193.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                      :        No. 18AP-690
                                                    (C.P.C. No. 16CR-1397)

v.                                                     :

                                                (REGULAR CALENDAR)

[D.W.],                                                :

      Defendant-Appellant.                    :

———————

D E C I S I O N

Rendered on June 4, 2019

———————

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Kimberly M. Bond*, for appellee.

**On brief**: *Maguire Schneider Hassay*, and *Paul L. Scarsella*, for appellant.

———————

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} D.W., defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found appellant guilty of three counts of rape with repeat violent offender specifications, violations of R.C. 2907.02 and first-degree felonies; obstructing justice, a violation of R.C. 2921.32 and a third-degree felony; and tampering with evidence, a violation of R.C. 2921.12 and a third-degree felony.

{¶ 2} Appellant and N.A.B. had an on-and-off relationship for many years. They had two children together, one of them being N.B., who was five years old at the time of the offenses. On September 19, 2015, after appellant had briefly babysat N.B. and her siblings, N.B. reported to N.A.B. that appellant had touched her inappropriately. That same day, N.A.B. took N.B. to Nationwide Children's Hospital ("Nationwide"). At Nationwide, Emily Combes, a forensic interviewer with the Child Advocacy Center

("CAC"), which is part of Nationwide's Center for Family Safety and Healing, interviewed N.B. Stacy Baumeyer, a sexual assault nurse examiner ("SANE") at Nationwide, then performed a medical examination on N.B. and collected various biological samples for laboratory analysis. Testing revealed that sperm fragments collected from N.B.'s body matched appellant's DNA.

{¶ 3} While appellant was in jail, N.A.B. visited him and spoke to him on the jail phone. On the recorded phone call, appellant asked N.A.B. to tell police that he did not rape N.B. N.A.B. submitted a letter to police, recanting the allegations against appellant and stating she had planted the evidence on N.B.

{¶ 4} On March 11, 2016, appellant was indicted on four counts of rape with repeat violent offender specifications, obstructing justice, and tampering with evidence. The obstructing justice and tampering with evidence charges stemmed from the phone conversation with N.A.B. and the letter N.A.B. submitted to police.

{¶ 5} A bench trial was held before the trial court after which the trial court found appellant guilty on all counts. The court held a sentencing hearing on August 21, 2018. On August 28, 2018, the trial court issued a judgment entry in which the trial court merged the first and second rape counts and the third and fourth rape counts for purposes of sentencing.  Plaintiff-appellee, the State of Ohio, elected sentencing on the second and fourth counts. The court sentenced appellant to 25 years to life with parole as to the second and fourth counts, and 24 months each as to the fifth and sixth counts, with Counts 2 and 4 running concurrently to each other but consecutive to Counts 5 and 6, for a total sentence of 27 years to life with parole. Appellant appeals the judgment of the trial court, asserting the following assignment of error:

> THE TRIAL COURT ERRED TO THE DETRIMENT OF THE APPELLANT'S RIGHT TO A FAIR TRIAL WHEN IT ALLOWED EVIDENCE OF THE FORENSIC INTERVIEW WITHOUT A SUFFICIENT RELATIONSHIP TO THE MEDICAL PURPOSE OF THE INTERVIEW.

{¶ 6} Appellant argues in his assignment of error the trial court erred when it allowed evidence of Combes's forensic interview with N.B. without sufficient relationship to the medical purpose of the interview. Generally, the admission or exclusion of evidence lies in the sound discretion of the trial court. *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 33, citing *State v. Bartolomeo*, 10th Dist. No. 08AP-969, 2009-Ohio-

3086, ¶ 24.   An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 7}   In the present case, appellant did not object to the admission of N.B.'s statements to Combes during trial; thus, our review is limited to consideration of whether the trial court committed plain error. *See State v. Hairston*, 10th Dist. No. 01AP-299 (Oct. 18, 2001), citing *State v. Robertson*, 90 Ohio App.3d 715, 728 (2d Dist.1993) (finding that the failure to object to evidence at trial constitutes a waiver of any challenge on that evidence on appeal, except for plain error). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error exists when there is error, the error is an obvious defect in the trial proceedings, and the error affects substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Id.*

{¶ 8}   Here, the crux of appellant's argument is that the statements made by N.B. to Combes were testimonial and made for investigatory purposes and not for the purpose of medical diagnosis. Appellant's argument focuses on the decision in *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742; thus, we will first comprehensively review *Arnold*. In *Arnold*, the defendant was found guilty of sexually abusing his four-year-old daughter. The child was taken to Nationwide, where evidence for a rape kit was collected. The next day, the child was interviewed at Nationwide's Center for Child and Family Advocacy ("CCFA") by a social worker employed by CCFA. The child indicated the defendant's "pee-pee" went inside her "pee-pee" and his mouth touched her "pee-pee." The child also made statements related to the police investigation; for example, that the defendant closed and locked the bedroom door before raping her, and he removed her underwear. After the interview, the child was physically examined by a pediatric nurse practitioner who worked at CCFA. The defendant was indicted on two counts of rape. At trial, the court determined the statements made to the social worker had been made for the purpose of medical diagnosis and were admissible hearsay under Evid.R. 803(4) and not barred by the confrontation clause. The jury eventually found the defendant guilty of one count of rape. This court affirmed the trial court's decision in *State v. Arnold*, 10th Dist. No. 07AP-789, 2008-Ohio-3471.

{¶ 9}   The Supreme Court of Ohio accepted the appeal to determine whether the out-of-court statements made by a child to an interviewer employed by a child advocacy center violate the right to confront witnesses. The court found that in interviewing the child at CCFA, the social worker occupied dual capacities as both a forensic interviewer collecting information for use by police and a medical interviewer eliciting information necessary for diagnosis and treatment. The court held the statements made to interviewers at child advocacy centers that are made for medical diagnosis and treatment are non-testimonial and are admissible without offending the confrontation clause. However, the court further held that statements made to interviewers at child advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the confrontation clause.

{¶ 10}   In its discussion, the court in *Arnold* explained that to determine whether a child's statements to a social worker are testimonial, the court must identify the primary purpose of the statements. The court found the objective of a child advocacy center like CCFA is neither exclusively medical diagnosis and treatment nor solely forensic investigation. Instead, the purpose of a child advocacy center is to provide a single, comprehensive, multi-disciplinary interview (often including law enforcement professionals, prosecutors, medical and mental health personnel, and child advocates) to reduce the number of interviews needed and to improve the quality of the investigation, the diagnosis, and the recommendation for treatment. The court stated that at CCFA, the purpose of the interview by the social worker employed by Nationwide is to gather as much information as possible, while a nurse practitioner or doctor, a children's services caseworker, and a law enforcement representative watch the interview from a separate room. Thus, the interview serves dual purposes: (1) to gather forensic information to investigate for police and potentially prosecute a defendant for the offense, and (2) to elicit information necessary for medical diagnosis and treatment of the victim by medical professionals.

{¶ 11} The court concluded that some of the statements the child made to the social worker primarily served a forensic or investigative purpose, such as the child's assertion that the defendant shut and locked the bedroom door before raping her; her descriptions of where her mother and brother were while she was in the bedroom with the defendant, of defendant's boxer shorts, of him removing them, and of what the

defendant's "pee-pee" looked like; and her statement that the defendant removed her underwear. These statements likely were not necessary for medical diagnosis or treatment. The primary purpose of that portion of the interview was not to meet an ongoing emergency but, rather, to further the state's forensic investigation. Thus, these statements were testimonial in nature and violated the confrontation clause.

{¶ 12} However, other statements provided information that was necessary to diagnose and medically treat the child. For example, the history obtained during the interview was important for the doctor or nurse practitioner to make an accurate diagnosis and to determine what evaluation and treatment were necessary. The child's statements that described the acts the defendant performed, including that he touched her "pee-pee," his "pee-pee" went inside her "pee-pee," his "pee-pee" touched her "butt," his hand touched her "pee-pee," and his mouth touched her "pee-pee," were necessary for proper medical diagnosis and treatment. The nurse practitioner who examined the child testified that the interview guided her exam in that it let her know whether or not she needed to test the child for a sexually transmitted infection. In eliciting these medically necessary statements, the court found, the social worker acted as an agent of the nurse practitioner who examined the child, not of the investigating police officers. Because the social worker did not act as an agent of police in obtaining these statements, they were non-testimonial and admissible without offending the confrontation clause.

{¶ 13} In the present case, appellant argues the focus of the inquiry into whether N.B.'s statements were testimonial should be on the overall testimony of the forensic interviewer and purpose of the interview and not on the statements of N.B. Appellant asserts that when the statements of a child are obtained in an interview setting that is not focused on medical diagnosis and treatment, like here, they should be found to be testimonial regardless of the content of the child's statement. Appellant also claims that because the nurse examiner testified that she only reports what she sees and does not diagnose, this should call into question the entire purpose of the forensic interview because the social worker testified little about the medical importance of her interview and talked mostly about collection of evidence. Appellant questions how a child's testimony could be used for medical diagnosis and treatment if the nurse examiner stated she uses Combes's forensic interview only to observe and not diagnose.

{¶ 14} We initially take note of two matters. First, in his appeal, appellant makes only the above arguments. Appellant does not endeavor to explain which of N.B.'s specific statements he believes were improperly admitted as having the primary purpose of being investigative; therefore, we do not undertake a statement-by-statement analysis to determine whether any particular statement was improperly admitted, as the court did in *Arnold*. Second, appellant's argument is severely hampered by the plain error standard. Appellant essentially challenges the Supreme Court's analysis in *Arnold* and asks this court to change the focus of the court's analysis in *Arnold* from that of the child's statements to the overall purpose of the forensic interview. It would be difficult, indeed, to show that there was an obvious defect in the trial proceedings when the trial court's decision is consistent with a decision of the Supreme Court.

{¶ 15} With the preceding in mind, because we find appellant's argument is inapposite to the Supreme Court's analysis in *Arnold*, we find no plain error. The court in *Arnold* recognized the dual purpose of a CAC interview in that it can be both for collection of evidence and medical purposes. However, in doing so, the court made clear that the focus of the inquiry is on the primary purpose of the child's statements to the forensic examiner. Here, we disagree with appellant's portrayal of Combes's testimony as being primarily focused on the collection of evidence. Although some of N.B.'s statements may have related to information helpful in investigating crimes, Combes made clear that her interview with N.B. yielded statements that were used in her medical care. Combes testified that after she interviews a sexual abuse victim in the emergency room setting, as here, she relays the child's statements to the SANE nurse, and writes a note in the child's medical record. She confirmed she relayed the information to the SANE nurse in this case and stated she does so in order for the provider to use the information in the treatment and diagnosis of the child. Combes also testified she screens for exposure to violence and physical abuse so the child's statements can be used for later medical treatment or a referral for therapy. Therefore, we find the trial court properly focused on the purpose of N.B.'s statements to the forensic interviewer, and the evidence demonstrated Combes's interview elicited statements from N.B. containing information primarily for N.B.'s medical diagnosis and treatment.

{¶ 16} Furthermore, whether the nurse examiner "merely" makes observations or actual medical diagnoses during the medical examination does not have any effect on the

primary purpose of the forensic interview and the nature of the statements and information gleaned therefrom. Regardless, even observations made during a medical examination are critical for determining necessary medical diagnoses and treatments in the future. Here, although Baumeyer, the SANE nurse, testified she does not provide a diagnosis but just reports what she observes, she also clearly testified she uses the information from the forensic interview to assist her with medical examination and treatment. She stated she watches the interview on a closed-circuit camera and then the forensic interviewer provides her with a full list of disclosures from the child, which she uses to assist her with medical treatment. She stated that after she learns the disclosures from the forensic interviewer, she works with the attending physician to determine the appropriate measures to take. She conducts a head-to-toe assessment, examining any areas of the body that are hurt, bruised, or scratched. She also conducts anal and genital exams. She explained her examination serves two purposes: to complete a medical head-to-toe assessment to make sure the child is not injured, and to collect evidence. Baumeyer testified that, in the present case, she relied on the information and disclosures provided by Combes when she conducted her medical examination of N.B. Therefore, we find that regardless of whether Baumeyer made only observations during her medical examination or actually provided medical diagnoses does not determine whether the primary purpose of the statements made by N.B. during her forensic examination were for medical purposes or evidence gathering. Appellant's arguments, on this point, are without merit.

{¶ 17} For the foregoing reasons, we find the trial court did not err when it allowed evidence of Combes's interview with N.B. The primary purpose of the statements made by N.B. during Combes's interview was for N.B.'s medical diagnosis and treatment. Therefore, we overrule appellant's sole assignment of error.

{¶ 18} Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____