[Cite as *State v. Berry*, 2019-Ohio-3902.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-9 |
| v. | : | (C.P.C. No. 15CR-5882) |
| Joseph L. Berry, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 26, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton.*

**On brief:** *Timothy Young*, Ohio Public Defender, *Carly M. Edelstein*, and *Katherine R. Ross-Kinzie*, for appellant. **Argued:** *Carly M. Edelstein.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Joseph L. Berry, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of aggravated murder and murder and sentencing him to life in prison. For the reasons that follow, we affirm.

**I. Factual and Procedural Background**

{¶ 2} On October 12, 2008, Marshaun Gray was killed at Club Paradise when he was shot in the back of the head. On December 1, 2015, Berry was indicted for aggravated murder, in violation of R.C. 2903.01(A), and murder, in violation of R.C. 2903.02(A), for the shooting death of Gray. Each charge included a firearm specification under R.C. 2941.145(A).

{¶ 3}   A few days after the shooting, the Columbus Division of Police presented Kevina Gray, the mother of one of Gray's children, with a photographic lineup as part of the investigation of Gray's death.  During that procedure, Kevina identified Berry as Gray's killer.  On September 22, 2016, Berry filed a motion to suppress Kevina's identification of him as the shooter during the photographic lineup procedure.  The evidence at the suppression hearing indicated that Columbus Police Detectives Jay Fulton and Pat Dorn presented Kevina with a six-person headshot photo array, featuring similarly looking individuals.  The detectives told her no details about Gray's murder or suspects.  Before seeing the photo array, Kevina told Detectives Fulton and Dorn that she had heard rumors that Gray's murder was in retaliation for Gray and his brother assaulting Berry a few months earlier.  In reviewing the photo array, Kevina initially identified one person in the photo array as being at Club Paradise during the shooting.   After she made this identification, Detective Dorn said the picture was of Berry.  Once Detective Dorn stated this, Kevina then wrote the following under the picture of Berry:  "From putting a name with this face and from his built [sic] and his hieght [sic] this is the man who killed Marshaun Gray. 100% sure." (State's Ex. A.)  The trial court denied the suppression motion at the conclusion of the hearing.

{¶ 4}   The matter proceeded to trial in October 2017.  During voir dire, the state used a peremptory strike to dismiss the only male African-American juror on the panel, prospective juror Lawson.  Berry objected to Lawson's dismissal and raised a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).  The trial court overruled the challenge, and Lawson was dismissed from the jury.  The state then used a peremptory strike to dismiss a prospective alternate juror, Scott.  Berry objected to Scott's dismissal, again raising a *Batson* challenge.  The trial court overruled the challenge to Scott's dismissal.

{¶ 5}   In support of its case against Berry, the state called eight witnesses to testify, including Kevina and Akilah Smith.  Both Kevina and Smith testified that they witnessed Berry shoot Gray at Club Paradise on October 12, 2008.  Kevina testified as follows.  When she and Smith arrived at the club the night of the shooting, Kevina keyed the name of her son into Gray's car because of his parental absenteeism.  Once inside, Kevina argued with Gray but then resolved the disagreement.  Soon thereafter, Kevina saw a man walk up and shoot Gray.  Kevina identified that man as Berry.  Kevina saw the side of Berry's face before

the shooting and described him as wearing a white button-down shirt with a blue stripe. Once Berry shot Gray, he tucked the gun away and ran out of the club. Kevina knew Berry prior to the shooting because the two had gone to school together. She did not hang out with him, but she was familiar with him. Kevina acknowledged that she did not immediately disclose the identity of the shooter to police. However, when she was presented with the photo array a couple days after the shooting, she identified Berry as the shooter based on her independent recollection of that night. Approximately one year after the shooting, Kevina saw Berry at a bar. Berry talked with Kevina and apologized for shooting Gray.

{¶ 6} Smith testified as follows. When she and Kevina arrived at Club Paradise on the night of the shooting they noticed Gray's vehicle was parked outside. They entered the club and saw Gray and his brother. At some point, there was a commotion amongst a group of girls. Those girls were escorted out of the club. Smith then saw someone come around a corner. Kevina lunged at Smith, pulling her down. The person who came around the corner was wearing a shirt with a dark blue or green stripe on the sleeve and was carrying a gun. Smith saw his face. But as she fell, she could only see his shirt sleeve and gun. She heard a boom and crawled around the corner. Smith also testified that "I really didn't see his face. I didn't see who walked up and actually pulled the trigger. I just seen his shirt. But it was the same shirt that came around the corner." (Oct. 25, 2017 Tr. at 46.) She further testified that "I didn't know who [Berry] was at the time. He came around the corner, but after the incident when I seen the [Facebook] pictures and stuff, then I knew it was him." (Oct. 25, 2017 Tr. at 42.) Upon realizing Gray had been shot, Smith and Kevina returned and stayed by him until police arrived. Smith identified Berry in the courtroom as the man who she saw come around the corner and shoot Gray.

{¶ 7} The state also presented the testimony of the first-responder officers, the crime scene detective, the chief deputy coroner, and a certified criminal gang investigator. Berry did not call any witnesses and rested without presenting any evidence.

{¶ 8} Based on the evidence presented at trial, the jury found Berry guilty on both counts. The trial court sentenced Berry to life in prison without the possibility of parole on the aggravated murder count, plus a mandatory three-year period of incarceration on the

firearm specification. For the purpose of sentencing, the murder count was merged into the aggravated murder count.

{¶ 9} Berry timely appeals.

## II. Assignments of Error

{¶ 10} Berry assigns the following errors for our review:

> [1.] The trial court's decision to excuse an African American juror after a *Batson* challenge is clearly erroneous when it fails to conduct the necessary *Batson* analysis and instead relies on impermissible factors without examining all of the relevant evidence.
>
> [2.] The trial court erred when it failed to suppress the out-of-court and in-court identification made by Kevina Gray in violation of Joseph Berry's rights to due process and a fair trial.
>
> [3.] Ms. Smith's first-time, in-court identification was unreliable, in violation of Mr. Berry's right to due process and a fair trial.
>
> [4.] Trial counsel provided ineffective assistance of counsel when it [sic] failed to object to Ms. Smith's first-time in-court identification.
>
> [5.] The trial court violated Joseph Berry's rights to due process and a fair trial when it entered judgment of conviction for aggravated murder and murder against the manifest weight of the evidence.

## III. Discussion

### A. First Assignment of Error – *Batson* Challenges

{¶ 11} In Berry's first assignment of error, he argues the trial court erred in permitting the prosecution to exercise peremptory challenges to potential jurors in violation of *Batson* at 93. This assignment of error lacks merit.

{¶ 12} "Under well-established principles of equal protection jurisprudence, * * * a peremptory challenge may not be used purposefully to exclude members of a cognizable racial group from jury service solely on the basis of their race." *State v. Powers*, 92 Ohio App.3d 400, 405 (10th Dist.1993), citing *Batson* at 84. "A court adjudicates a *Batson* claim in three steps." *State v. Murphy*, 91 Ohio St.3d 516, 528 (2001)."First, the opponent of the peremptory challenge must make a prima facie case of racial discrimination." *State v.*

*Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 106, citing *Batson* at 96-98. To meet the first prong of a *Batson* challenge and establish a prima facie case of purposeful discrimination in the prosecution's exercising its peremptory challenges, a defendant must demonstrate: (1) the prosecution peremptorily challenged members of a cognizable racial group; and (2) the facts and any other relevant circumstances raise an inference that the prosecution used the peremptory challenges to exclude jurors on account of their race. *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 21. An inference can arise through "a 'pattern' of strikes against black jurors included in the particular venire * * *." *Batson* at 97. "Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Id.* Moreover, "[a]pparent racial discrimination may be evident from the record by questions, remarks or comments relating to a single peremptory strike." *State v. Greene*, 2d Dist. No. 24307, 2011-Ohio-4541, ¶ 10.

{¶ 13} Second, "if the trial court finds this requirement fulfilled, the proponent of the [peremptory] challenge must provide a racially neutral explanation for the challenge." *Bryan* at ¶ 106, citing *Batson* at 96-98. To meet its burden, "the [prosecution] must give a clear and reasonably specific explanation of [its] legitimate reasons for exercising the challenge[]." (Internal citations and quotations omitted.) *Batson* at 98, fn. 20. This explanation must be "based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Thus, the "prosecution's race-neutral explanation need not rise to the level of a challenge for cause." *Jennings* at ¶ 18, citing *State v. Cook*, 65 Ohio St.3d 516, 519 (1992), citing *Batson* at 96-98. Instead, the issue in the second step is "the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez* at 360.

{¶ 14} The third and final step requires the trial court to "decide based on all the circumstances, whether the opponent has proved purposeful racial discrimination." *Bryan* at ¶ 106, citing *Batson* at 98. "Because the issue of discriminatory intent often turns on the prosecution's credibility, it is 'a finding of fact of the sort accorded great deference on appeal.' " *Jennings* at ¶ 22, quoting *Hernandez* at 364-65. Therefore, we will not reverse a trial court's ruling that finds no discriminatory intent unless the ruling is clearly erroneous.

*Jennings* at ¶ 18, citing *Bryan* at ¶ 106, citing *State v. Hernandez*, 63 Ohio St.3d 577, 583 (1992).

{¶ 15} Here, the state used its second peremptory challenge to remove Lawson from the venire and its final peremptory challenge to remove Scott from serving as an alternate juror. Berry, an African-American, objected to these peremptory challenges on *Batson* grounds. In response to the peremptory challenge as to Lawson, Berry's counsel stated: "[P]ursuant to Batson, we would ask the prosecutor to show cause beyond Mr. Lawson's race. He's the only male black juror that just got excused." (Voire Dire Vol. II at 68.) The trial court indicated that it did not "see a Batson problem existing at this point in time," but it did give the parties an opportunity to argue and develop the issue. (Voire Dire Vol. II at 69.) The state indicated that it removed Lawson because of his voir dire answers in this case and his voir dire answers in another case as relayed by that case's prosecutor. After hearing the state's explanation, the trial court stated: "I'm just making a record * * * I don't see a problem at this point in time. They are making their objection. They are making their record and we'll see where it goes. You know, it's not like we don't have  - - there is a shortage of jurors in there, though. And just because he picked one doesn't necessarily mean that we have the issue. Okay?" (Voire Dire Vol. II at 71.) Thus, the trial court overruled the *Batson* challenge to Lawson's removal.

{¶ 16} After the state used its final peremptory challenge to remove Scott from serving as an alternate juror, the trial court asked defense counsel whether the defense was renewing "Batson at this point in time * * * on the alternate?" (Voire Dire Vol. II at 78.) Defense counsel answered in the affirmative. The trial court ruled: "Okay. I don't see the pattern. I understand why, so I don't think he's impinged upon your client. Plus she's the second alternate in the line anyway. But you both had me nervous I would have no alternates." (Voire Dire Vol. II at 78.) There was no further discussion as to the removal of Scott.

{¶ 17} Berry argues that whether a prima facie case existed is moot and this court need not consider it. He asserts that even if it is not moot, the state struck from the jury the only person who looked like him and therefore he met his burden. Berry also argues that the state's reasons for Lawson's dismissal were not specific enough and were not facially neutral. He further argues that even if the state's reasons were sufficiently clear and facially

neutral, they were pretext for discrimination as demonstrated by comparing voir dire answers given by non-dismissed jurors with Lawson's answers.  We are unpersuaded.

{¶ 18} We construe the transcript of the voir dire proceedings to indicate the trial court's determination that Berry failed to establish a prima facie case of discrimination as to the removal of potential juror Lawson and alternate juror Scott.  That is, even though the trial court permitted the state to provide an explanation for its dismissal of Lawson, it found no inference of purposeful discrimination and thus denied Berry's *Batson* objections on the preliminary issue of whether he had made a prima facie showing.  We agree the record does not support an inference of purposeful discrimination by the state in its peremptory challenges to Lawson and Scott.  The record is clear that Lawson is a male African-American.  And while Scott's race was not expressly stated in the record, the record strongly suggests she is also African-American.  However, the showing that Lawson and Scott are both African-Americans is not, by itself, sufficient to meet the prime facie requirement.  In objecting to the peremptory challenges at trial, Berry's only reason given was that Lawson was "the only male black juror that just got excused."  (Voire Dire Vol. II at 68.)  But that reason did not address the presence of African-American females, and there is no indication in the record as to whether these individuals were the only two African-Americans in the venire.  Thus, we conclude the trial court did not err in finding no inference of purposeful racial discrimination.  Consequently, Berry's arguments challenging the state's explanation are moot.[1]

{¶ 19} Accordingly, we overrule Berry's first assignment of error.

### B.  Second and Third Assignments of Error – Eyewitness Identifications

{¶ 20}  Berry's second and third assignments of error are interrelated.  He challenges the trial court's denial of his motion to suppress Kevina Gray's out-of-court identification of him as the shooter. He also challenges Kevina and Smith's in-court identification of him as the shooter as violating his due process rights.  These assignments of error lack merit.

---

[1] Even if Berry's comparative juror analysis argument is not moot insofar as it could be construed as relating to the threshold prima facie issue, we note that Berry did not present this argument in the trial court.  It is therefore waived and not a basis for this court to reverse.  *State v. Mohamood*, 10th Dist. No. 17AP-756, 2018-Ohio-3388, ¶ 12. *See United States v. Atkins*, 843 F.3d 625, 634-35 (6th Cir.2016) (noting it is not reversible error for a trial court not to conduct sua sponte its own comparative juror analysis on the record, and an appellate court is not required to conduct such an analysis for the first time on appeal).

{¶ 21} " 'Appellate review of a motion to suppress presents a mixed question of law and fact.  When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.  Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " (Citations omitted.) *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶ 22} Whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the suppression of an eyewitness identification involves a two-step inquiry.  *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012).  First, the trial court must determine whether the identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification.  *State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, ¶ 38 (10th Dist.), citing *Neil v. Biggers*, 409 U.S. 188 (1972). " 'The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state.' "  *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 19, quoting *State v. Brown*, 38 Ohio St.3d 305, 310 (1988).  Confrontations unnecessarily suggestive of the suspect's guilt are those confrontations "infected by improper police influence" resulting in a "corrupting effect" on the identification process.  *Perry* at 232.  The impermissibly suggestive inquiry probes whether "the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection."  *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir.2009).

{¶ 23} Second, if the confrontation procedure was unduly suggestive, then the trial court must determine whether the identification itself was unreliable under the totality of the circumstances.  *Id.*  The factors that must be considered when evaluating reliability under the totality of the circumstances test are as follows: (1) the witness's opportunity to view the offender at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the offender; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the

length of time that has elapsed between the crime and the confrontation. *Monford* at ¶ 39, citing *Biggers* at 199-200.

{¶ 24} As to Kevina's out-of-court identification in response to a photo array, Berry argues that Detective Dorn impermissibly suggested his involvement in the shooting by stating his name as the person who Kevina identified as being at the club during the shooting. We disagree. While Kevina's statement naming Berry as the shooter suggested she did not immediately recall the name of the person that she had initially recognized in the picture, she also indicated her independent knowledge of Berry, including his height and build, which are not reflected in the picture. Even though Detective Dorn stated that the person in the picture is Berry, there is no evidence that either Detective Fulton or Detective Dorn "steered" Kevina to Berry as the perpetrator of the crime, independent of her recollection. Kevina had already singled Berry out in the photo array as being at the club on the night of the shooting, and she had already named Berry as someone who may have been involved in the shooting. The timing of Detective Dorn's statement of Berry's name, and Kevina's immediate response to that statement, was pertinent to the credibility of Kevina saying he was the shooter, but not the admissibility. We find that the identification procedure was not so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. Consequently, Kevina's credibility and the weight to give Kevina's out-of-court identification was for the jury to decide based on its consideration of all pertinent facts.

{¶ 25} We also reject Berry's challenge to the in-court identifications. As to defendants identified in the courtroom under suggestive circumstances, the due process rights of those defendants are generally met through the ordinary protections in trial. *Perry* at 244-46. These protections include the right to confront witnesses; the right to representation of counsel, who may expose flaws in identification testimony on cross-examination and closing argument; the right to jury instructions advising use of care in appraising identification testimony; and the requirement of proof beyond a reasonable doubt. *United States v. Hughes*, 562 F.Appx. 393, 398, citing *Perry*. Thus, in the absence of impermissibly suggestive out-of-court identification procedures, "the requirements of due process are satisfied in the ordinary protections of trial." *United States v. Whatley*, 719 F.3d 1206, 1216 (11th Cir.2013); *see State v. Stidhum*, 1st Dist. No. C-170319, 2018-Ohio-

4616, ¶ 39 (rejecting argument that "all first-time, in-court identifications are inherently suggestive and violate due process unless preceded by a successful identification in a nonsuggestive procedure or prescreened by the trial court"). Therefore, in-court identifications, where there has been no prior unlawful or unnecessarily suggestive police conduct, are properly admitted. *See State v. E.T.*, 10th Dist. No. 17AP-828, 2019-Ohio-1204. Because Kevina's out-of-court identification was not the result of an impermissibly suggestive identification procedure, we further find that her in-court identification was not tainted by that procedure.

{¶ 26} As to Berry's appellate challenge to Smith's in-court identification, Berry did not object to or otherwise challenge Smith's identification on due process grounds in the trial court. Thus, we must review this alleged error under the plain error standard. *See State v. D.W.*, 10th Dist. No. 18AP-690, 2019-Ohio-2193, ¶ 7 (because defendant failed to object to admission of evidence, our review is limited to whether the trial court committed plain error). To show plain error, Berry must show: (1) error, meaning a deviation from a legal rule; (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings; and (3) the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27-28 (2002). Berry cannot meet this standard. Because Smith's in-court identification was subject to cross-examination and other trial protections and because there are no allegations of any impermissibly suggestive pre-trial identification procedures, Berry fails to show that Smith's in-court identification of him as the shooter violated his due process rights. Therefore, not only was there no plain error, there was no error at all.

{¶ 27} For these reasons, we overrule Berry's second and third assignments of error.

## C. Fourth Assignment of Error – Ineffective Assistance of Counsel

{¶ 28} In his fourth assignment of error, Berry contends he was denied effective assistance of counsel because his counsel failed to object to Smith's in-court identification. This assignment of error is not well-taken.

{¶ 29} In order to prevail on a claim of ineffective assistance of counsel, Berry must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires Berry to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If

Berry can meet the first prong, then he must establish that he was prejudiced by the deficient performance. *Id.* In evaluating a claim of ineffective assistance of counsel based on counsel's failure to file a motion or make an objection, we consider whether such an objection would have been meritorious. *State v. Cashin*, 10th Dist. No. 09AP-367, 2009-Ohio-6419, ¶ 12.

{¶ 30} Berry fails to show his counsel was deficient. He contends his counsel was deficient in not objecting to Smith's in-court identification on due process grounds. However, had Berry's counsel objected to this identification on these grounds, the objection would not have been meritorious for the reasons discussed above in reference to his third assignment of error. Therefore, Berry's trial counsel was not deficient in not objecting to Smith's in-court identification on due process grounds.

{¶ 31} Accordingly, we overrule Berry's fourth assignment of error.

### D. Fifth Assignment of Error – Manifest Weight of the Evidence

{¶ 32} Berry's fifth assignment of error asserts his aggravated murder and murder convictions were against the manifest weight of the evidence because there was no reliable evidence to prove he was involved in Gray's murder. We disagree.

{¶ 33} Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal on manifest-weight grounds is conflicting evidence"). However, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 34} Although Berry challenges the credibility of Kevina and Smith's testimony, he does not direct this court to any evidence in conflict with their testimony identifying him as the shooter. A review of the record fails to show that the jury clearly lost its way in finding Berry guilty of aggravated murder and murder. The central fact in dispute at trial was the identity of Gray's killer. There was evidence that Smith and Kevina initially declined to name Berry as the shooter. And Smith's testimony was equivocal on the issue of whether she saw Berry's face prior to the shooting. However, the presence of inconsistent or seemingly conflicting evidence does not in itself render a verdict against the manifest weight of the evidence because the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21. Thus, it was within the province of the jury to evaluate any inconsistencies or conflicts in the evidence and determine their significance as they related to the credibility of Kevina and Smith and their implication of Berry in the shooting.

{¶ 35} Because Berry's convictions for aggravated murder and murder were not against the manifest weight of the evidence, we overrule his fifth assignment of error.

## IV. Disposition

{¶ 36} Having overruled all five of Berry's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and BEATTY BLUNT, JJ., concur.

————————————