[Cite as *State v. A.W.*, 2025-Ohio-4554.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio, :

      Plaintiff-Appellee, :

v.                        No. 23AP-421

:           (C.P.C. No. 20CR-4150)

[A.W.], :

                                (REGULAR CALENDAR)

      Defendant-Appellant. :

:

---

D E C I S I O N

Rendered on September 30, 2025

---

**On brief:** *Shayla D. Favor*, Prosecuting Attorney, and *Darren M. Burgess*, for appellee.

**On brief:** *Eric W. Brehm*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, [A.W.], appeals the judgment of the Franklin County Court of Common Pleas following a bench trial and his conviction for three counts of first-degree felony rape and one count of third-degree felony gross sexual imposition. [A.W.] asserts three assignments of error with the trial court's judgment.

{¶ 2} [A.W.] is the biological father of L.D. (d/o/b 4/1/2011) and M.D. (d/o/b 4/11/2014), two girls who were aged 8 and 5 at the time of the alleged offenses. On January 31, 2020, L.D. and M.D. spent a weekend with [A.W.], following a family memorial service. L.D. testified that [A.W.] anally and vaginally raped both her and her sister, at his house, in his bed. (Apr. 24, 2023 Tr. at 31-38.) The rapes occurred in [A.W.]'s bed—after he removed his daughters' clothing, he penetrated them using his fingers and genitalia. *Id.* L.D. testified that [A.W.] did this to her, and that she saw him do it to her younger sister,

who was also in the bed. *Id*. at 35-36. She also testified that [A.W.] "told me not to tell no one." *Id*. at 35.

{¶ 3} L.D. and M.D.'s mother, D.D., testified and identified [A.W.] in court. *Id*. at 42. She stated that L.D. and M.D. spent between January 31 and February 4, 2020 at [A.W.]'s home. *Id*. at 44. After the girls came home to her, she learned of "some sort of allegation of them doing something to them," and she ultimately confronted him about it on Snapchat; he messaged her back and denied raping either of the girls. (*See* Ex. A (Snapchat messages with "iamarapgod," who D.D. identified as [A.W.])). D.D. testified that once she found out about the allegations, she took her children to Nationwide Children's Hospital ("NCH"), and then to the Child Advocacy Center ("CAC") attached to NCH. (Tr. at 50.) As a result, she discovered that M.D. had been infected with Chlamydia. *Id*.

{¶ 4} D.D.'s sister S.T. testified and indicated that after the girls returned from staying with [A.W.], M.D. went to the restroom and came out crying saying it was hurting in her private area. *Id*. at 61-62. M.D. apparently could not explain things to S.T., so S.T. asked L.D. what was wrong, and L.D. told her that "they were getting touched on by their father." *Id*. S.T. immediately informed D.D. of that allegation.

{¶ 5} On the second day of trial, defense counsel began with a hearsay objection:

> The objection I'd like to make, we are going to get involved in medical testimony regarding hearsay statements. I did receive last week two cases from the prosecutor, State v. Muttart, M-U-T-T-A-R-T, 2006-1293, 2006-1488, a Supreme Court of Ohio Case, 116 Ohio State 3rd 5; and also the case of -- that deals with medical records and hearsay testimony, State v. Edinger, E-D-I-N-G-E-R. That's the Court of Appeals Tenth District, our district here, 05AP-31, decided March 30, 2006.
>
> I understand what the case law is, Your Honor. I would, for the record, make an objection regarding any hearsay testimony regarding these medical records that the State is going to intend to introduce. I believe that's a lot of the testimony today involving social workers and medical doctors regarding the examination of these two young people. And also videotape later on this afternoon, videotapes.

(Tr. at 71.) The trial court responded:

> What I'd like to do is to make sure we have a properly reserved objection, also in light of the fact that this is a bench trial, which always leads to that weird situation where I'm both serving as

the 104 gatekeeper and the trier of fact. Essentially, I'm going to have to watch the video in its entirety and see the statements to which you are objecting before I can even make that ruling.

So I think what I'm going to end up doing is coming back once we've closed each witness and asking you to renew an objection to any specific statements that you heard or to some group of statements that you heard so we can come back retroactively so I can decide at that moment whether I'm going [to] keep them in my analysis and basically render them inadmissible by removing them from my analysis or, as I think we did once yesterday, do some sort of conditional or limited admissibility kind of thing.

So I appreciate it. And I'll make sure to come back to you. But I think that's probably the better way to handle it. So that way basically their proffer, your objection, will be fully on the record for the higher-ups. And then we are just trusting me to know when to exclude and then not consider that which I've excluded. All right?

*Id.* at 72-73. Thereafter, Dr. Farah Brink from NCH testified that she conducted physical examinations of L.D. and M.D. on February 12, 2020, and confirmed that M.D.'s genital exam was normal, *id.* at 88, as was L.D.'s, *id.* at 91, but she had requested STD urine tests for M.D. and L.D., and that M.D. subsequently tested positive for Chlamydia. *Id.* at 87-88; Ex. B at 21-22, Ex. C at 22-23. The trial court overruled [A.W.]'S objection as it related to Dr. Brink's testimony, holding that her observations were not "actual statements," and that her restatement of things she had discovered from records fell within the business records exception to the hearsay rule and were not testimonial. (Tr. at 92-93.)

{¶ 6} Ashley Cooley, a forensic interviewer from the CAC at NCH, testified and indicated that she had conducted a mental health and forensic evaluation of M.D. in conjunction with Dr. Brink's physical examination. *Id.* at 96-107; Ex. B1 (videorecording), and Ex E1 and E2 (anatomical drawings of boy and girl). In her recorded interview, M.D. told Cooley that that when she and her sister were in [A.W.]'s bed, he removed her clothing, laid behind her, and exposed his penis. He then "humped" her. When she moved away [A.W.] followed. (Ex. B1 at 14:50-16:30.) [A.W] repeatedly opened her legs and inserted his fingers into her body. *Id.* at 18:00-19:45. She saw him do the same to L.D., who was also in the bed. *Id.* at 20:30-22:43. [A.W.] did the same using his penis. *Id.* at 24:30-26:00. M.D. also witnessed [A.W.] masturbate and ejaculate. *Id.* at 28:00-29:00. When she

refused to touch his genitalia, [A.W.] became angry and instructed the sisters not to say anything to anyone. *Id*. at 15:25; 31:00-31:35.

{¶ 7} Columbus Police Detective Stephen Hill testified that he was assigned to investigate this matter, and that he reviewed the forensic interviews of M.D. and L.D. and that he interviewed [A.W.]. [A.W.] denied any sexual touching of either girl. (Tr. at 111.) He admitted that he grabbed their butts but indicated that it was not for a sexual purpose. *Id*. at 112. He also stated that he was later informed by [A.W.]'s aunt that she had taken [A.W.] to OSU Hospital at some point and that [A.W.] had then told her he had tested positive for Chlamydia. *Id*. at 112-113. Detective Hill then subpoenaed the State Department of Health for [A.W.]'s medical records, and those records revealed that on January 22, 2020, [A.W.] had submitted a urine sample and that it had tested positive for Chlamydia. *Id*. at 113-114; Ex. D. The trial court sustained [A.W.]'s continuing objection regarding [A.W.]'s aunt's statements to Detective Hill insofar as they were offered for the truth of the matter asserted but admitted the statements for the limited purpose of explaining why Detective Hill had subpoenaed [A.W.]'s medical records. *Id*. at 115-116.

{¶ 8} Alicia Daniels, a different forensic interviewer from the CAC at NCH, testified and indicated that she had conducted a mental health and forensic evaluation of L.D. *Id*. at 122, Ex. C1 (videorecording); Ex. F1 and F2 (anatomical drawings of boy and girl). In her recorded interview, L.D. explained that she was there to see a doctor because her father touched and "humped" her in bed. (Ex. C1 at 22:30.) L.D. stated that [A.W.] had removed her pants before touching her, and that he placed his "private parts" on hers, *id*. at 25:00-26:30, and identified [A.W.]'s "private part" as his penis when shown anatomical drawings. *Id*. at 28:45; Ex. F1. L.D. stated that it hurt, and when [A.W.] stopped "it was burning." Ex. C1 at 27:00. She also tried to move away, but [A.W.] would not let her. *Id*. at 30:00. L.D. also indicated that she witnessed [A.W.] ejaculate. *Id*. at 38:30. On cross-examination, Daniels admitted that L.D. was somewhat inconsistent and confused as to whether [A.W.] had touched her before or after the memorial party, and also as to the number of times [A.W.] had touched her. (Tr. at 126-127.)

{¶ 9} At the close of the state's case, [A.W.]'s Snapchat messages were admitted without objection. *Id*. at 130 (admitting Ex. A). [A.W.] objected to the admission of M.D. and L.D.'s NCH records and CAC interview videos. *Id*. The trial court began to go through

each of the hospital reports, starting with M.D.'s, and indicated that "in addition to some irrelevant information, I also noticed some, I would say, third-level hearsay when we discuss specifically things that were reported." *Id.* at 131. Because [A.W.]'s counsel admitted that some of the information in each exhibit was admissible, the trial court indicated that it planned to go through each item offered and solicited the counsel to come up with a plan to identify those aspects it objected to, to preserve the record. *Id.* at 133. [A.W.]'s counsel agreed to this plan and suggested that "the State could go ahead and move these exhibits as they are and then maybe the State and I could meet and then present this to you tomorrow morning as to paragraph such and such." *Id.* The court accepted that plan as to the records and the videos but overruled it as to the anatomical drawings and admitted them. *Id.* at 137-139 (admitting Ex E1, E2, F1, & F2).

{¶ 10} The following day, defense counsel and the state presented their results. The state eliminated several pages from exhibit B, but defense counsel objected to the entire exhibit:

> MR. RIGG: The basis would be hearsay, Your Honor, hearsay evidence. Specifically, [M.D.] did not testify, and these records are from the notes taken by the physician or the testimony of the social worker. Ashley Cooley, I believe, is who testified to State's Exhibit B.
>
> THE COURT: So to that extent, the objection is going to be overruled on the basis of the business records exception for the medical records themselves, the statements made for purposes of medical diagnosis.
>
> And then with respect to the Confrontation Clause under Crawford and under the State's primary-purpose rule, we don't have – the Court finds they are nontestimonial so that the Sixth Amendment doesn't apply. All right.

(Tr. at 145-146.) The state also eliminated several pages from exhibit C, but defense counsel again objected based on hearsay, even though L.D. *had* testified. *Id.* The trial court overruled that objection and admitted that exhibit as well. There was no specific discussion regarding exhibits B1 and C1, the videorecorded CAC interviews.

{¶ 11} [A.W.] testified in his own defense. He denied ever committing any sexual acts with them. *Id.* at 160. He admitted that he had Chlamydia and that he had told his aunt about it, but stated that he believed the explanation that he had engaged in sexual

conduct with [M.D.] was just his aunt "trying to connect dots. I guess it was just convenient." *Id*. at 161. He denied that he had given M.D. Chlamydia. *Id*. at 162.  He claimed that both M.D. and L.D. had been lying in the interviews.  *Id*. at 167.

{¶ 12}  After deliberation, the trial court found [A.W.]  guilty of Counts 2 through 5 in the indictment, as stated above. The court ordered a pre-sentence investigation, and on May 23, 2023, the court sentenced [A.W.] to a mandatory term of 60 months on the gross sexual imposition and to terms of 15 years to life on each of the rape counts, all counts concurrent, for a total aggregate sentence of 15 years to life imprisonment.

{¶ 13}  This appeal followed.  [A.W.] asserts three assignments of error with the trial court's judgment:

> 1. The trial court erred in satisfying evidentiary safeguards required for admitting hearsay while acting in a "dual role" in a bench trial.
>
> 2.  The trial court improperly admitted hearsay evidence under the guise of explaining police conduct resulting in prejudicial error.
>
> 3. The trial court erred in admitted testimony [sic] out-of-court testimony from witness [M.D.], who did not testify, violating the Sixth Amendment Confrontation Clause and principles of Ohio law.

{¶ 14}  [A.W.]'s first and second assignments of error both challenge the trial court's hearsay evidence rulings, and we observe that "[a]s with other evidentiary rulings, the determination whether hearsay statements are subject to exception rests within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. . . . [Unless the trial court] has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of the trial court." (Internal citations and quotations omitted). *State v. Fowler*, 2017-Ohio-438, ¶ 15 (10th Dist.).  Accordingly, absent a showing that the trial court's hearsay decisions were an abuse of its discretion, these two assignments of error must be overruled.

{¶ 15}  [A.W.]'s third assignment of error argues that the trial court violated his rights under the Confrontation Clause to the United States Constitution.  The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had had a prior opportunity

for cross-examination of the witness. *See, e.g.*, *State v. Durdin*, 2014-Ohio-5759, ¶ 15 (10th Dist.). But in *State v. Arnold*, 2010-Ohio-2742, the Supreme Court of Ohio held that the interview of a child witness at a CAC serves dual purposes, and that although those statements which "serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination," statements "that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause." *Id*. at paragraphs one and two of the syllabus. Therefore, if the allegedly hearsay statements that [A.W.] challenges were made for the purposes of medical diagnosis and treatment, then they do not present a Confrontation Clause problem and are admissible.

{¶ 16} Our analysis of this appeal is both guided and restrained by the fact that [A.W.] elected to waive his right to a jury and to be tried by the court. Although [A.W.] suggests that this places the trial court in a "dual role" requiring us to employ a stricter form of review, Ohio courts "indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. White*, 15 Ohio St. 2d 146, 151 (1968). *See also State v. Arnold*, 2016-Ohio-1595, ¶ 39, and *State v. Pearson*, 2015-Ohio-3974, ¶ 13 (10th Dist.) ("In reviewing a bench trial, 'an appellate court presumes that a trial court considered nothing but relevant and competent evidence in reaching its verdict,' and this presumption 'may be overcome only by an affirmative showing to the contrary by the appellant.' "). All three of [A.W.]'s assignments of error are subject to the *White* presumption, and unless [A.W.] can affirmatively demonstrate that the trial court both considered and relied upon inadmissible hearsay or forbidden Confrontation Clause evidence, that presumption is fatal to all three assigned errors.

{¶ 17} And here, [A.W.] simply raises a spectre—he argues that a bench trial creates "a unique risk" of the consideration of inadmissible evidence, and argues that the trial court's decision to watch the entire video prior to determining whether any of the statements therein were inadmissible violates Evid.R. 104 and 403, "which require courts to exclude prejudicial evidence before it can influence fact-finding." (Reply Brief of Appellant at 1.) But this is not an accurate portrayal of the trial court's role; rather, the court is simply required to consider the admissibility of evidence, but then set aside any

inadmissible evidence when evaluating whether the state has proved its case beyond a reasonable doubt. This is akin to a jury being instructed to disregard inadmissible statements, and frankly is within the very heart of the judicial function. Moreover, it is precisely why reviewing courts are required to presume that in a criminal trial to the bench that the trial court considered only admissible evidence "unless it affirmatively appears to the contrary." *White*, 15 Ohio St.2d at 151. If trial courts were required to engage in the type of analytic process when determining admissibility that [A.W.] claims to be mandatory, it is difficult to imagine how a bench trial could ever be held.

{¶ 18} [A.W.] has not pointed to any specific inadmissible or unfairly prejudicial statements—rather, he complains that the medical records and the videorecorded CAC interviews should not have been admitted at all. But our review of the record and briefs has failed to reveal any affirmative indication that the trial court considered any inadmissible evidence for any purpose, let alone an improper one. Instead, based on its statements and judgments, we believe the court was quite scrupulous in trying to protect the defendant's right to a complete record of its evidentiary decisions. In *Arnold*, 2010-Ohio-2742, ¶ 2, the Supreme Court observed that "statements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause." And in *In re D.W.*, 2019-Ohio-2193 (10th Dist.), we held that the trial court did not plainly err to the prejudice of the defendant when it admitted evidence of a forensic interview of a child victim conducted at a CAC, because the primary purpose of the statements made by the child during the interview were for medical diagnosis and treatment rather than for investigatory purposes.

{¶ 19} We reach the same result here. Because [A.W.] has not identified any individual problematic statements in the interviews of L.D. or M.D., and because those statements were obtained in the course of medical evaluations of both children for purposes of obtaining treatment, we cannot say that the trial court erred by considering at least portions of each interview. And applying *Arnold*, our own review of the interviews does not reveal that they were primarily conducted for investigative purposes. Indeed, the interviews resulted in medical and therapeutic recommendations for each of the two children, and the subsequent testing of a sample obtained from M.D. during her visit to the CAC resulted in her being referred for treatment for Chlamydia.

{¶ 20} [A.W.] also challenges the statements of L.D. and M.D.'s aunt, S.T., as hearsay. But even insofar as those statements may have been hearsay, he has not shown that they were considered by the trial court. Moreover, even the challenged statements are harmlessly duplicative, because the same substantive evidence was admitted by Detective Rich, D.D., L.D., Ashley Cooley, and ultimately by [A.W.] himself.

{¶ 21} In short, [A.W.] has simply not demonstrated that the trial court relied on any inadmissible hearsay statements, or any statements obtained in violation of his right to confrontation. Accordingly, pursuant to *White* we presume that the trial court did not consider any such statements for an improper purpose, and therefore, all three of his assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

———————————