[Cite as *State v. Cunningham*, 2024-Ohio-2032.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                        :               No. 21AP-470
                                                 (C.P.C. No. 18CR-5708)

v.                                                      :

                                                  (REGULAR CALENDAR)

Mario H. Cunningham,                                    :

      Defendant-Appellant.                      :

---

D E C I S I O N

Rendered on May 28, 2024

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee.

**On brief:** *Brehm Legal Group*, *Eric W. Brehm*, and *Heather J. Landis*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendant-appellant, Mario H. Cunningham, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas, pursuant to jury verdicts, finding him guilty of four counts of robbery with accompanying repeat violent offender ("RVO") specifications. For the reasons that follow, we affirm.

## I. Facts And Procedural History

{¶ 2} By indictment filed November 20, 2018, plaintiff-appellee, State of Ohio, charged appellant with four counts of robbery, in violation of R.C. 2911.02, felonies of the second degree, and four counts of robbery, in violation of R.C. 2911.02, felonies of the third degree. Each second-degree felony robbery count contained an RVO specification pursuant

to R.C. 2941.149.  The charges against appellant arose from three separate bank robberies that occurred in Columbus, Ohio on November 2, November 9, and November 14, 2018.

{¶ 3}  Appellant pled not guilty to the charges and a jury trial commenced on May 10, 2021.  The state dismissed the third-degree felony robbery counts prior to trial. The following facts were adduced at trial.

{¶ 4}  On November 2, 2018, Carolina Ramirez, Merly Perez, and Jetta Berry were working at a Heartland Bank located at 130 North Wilson Road, near the intersection of West Broad Street and Wilson Road.  At approximately 11:52 a.m., a man walked up to Ramirez's teller station and placed a box on the counter.  The man told Ramirez the box "was a bomb; that if [she] didn't give him the money it would explode or if [she] called the police it would explode."  (May 10, 2021 Tr. Vol. 1 at 98.)  Perez, who was working at the teller station next to Ramirez, heard the man tell Ramirez, "give me some money."  (Tr. Vol. 1 at 138.)  Ramirez gave the man cash, and the man took off, leaving the box behind on the counter.  Ramirez activated her alarm and evacuated the bank.

{¶ 5}  Douglas Hotchkiss, a Columbus Division of Fire public safety bomb technician, arrived at Heartland Bank shortly after the incident to neutralize the potential bomb threat.  Hotchkiss used a robot to bring the box outside to the bank's parking lot, and then "[tore] open" the box using high velocity water shot from a 12-gauge shotgun. (Tr. Vol. 1 at 219.)  Hotchkiss confirmed that the device did not hold any actual explosives.

{¶ 6}  Once the bomb squad declared the area safe, Detective John Herman, from the Columbus Police Department, collected the pieces of the device which were lying in the Heartland Bank parking lot.  Detective Herman identified the items he recovered from the parking lot as four pieces of a metal container, a black sock, batteries, and a tea steeper. (State's Exhibit F1-F4.) Detective Herman then spoke with the Heartland Bank employees and asked them to provide a description of the suspect.  Ramirez described the suspect as being in his late 30s or early 40s, of medium skin color, with no beard or facial hair, and as being either bald or having very short hair.  Ramirez informed police that she "definitely thought she could ID the person."  (Tr. Vol. 1 at 209-10.)  Perez described the suspect as "tall, black; on the thin side."  (Tr. Vol. 1 at 140.)  Berry, who was seated at her desk in front of the teller stations when the suspect walked in, described the suspect as 5'5" to 5'6", about 30 years old, and 160 pounds.

{¶ 7}  Police showed Ramirez a photo array containing appellant's photograph on November 13, 2018, but Ramirez did not identify anyone from the array.  At trial, however, Ramirez identified appellant as the person who robbed Heartland Bank on November 2, 2018.  Ramirez identified state's Exhibit C as the surveillance video from Heartland Bank on November 2, 2018, which depicted the robbery.  The state played the surveillance video for the jury.  The surveillance video provides a clear view of the suspect's face and hands, and the number "50" is visibly tattooed on the top of the suspect's right hand.

{¶ 8}  On November 9, 2018, Mariama Bah and Jacinda Goings were working at a Chase Bank located at 3100 West Broad Street, a few blocks east from the intersection of West Broad Street and Wilson Road.  At approximately 2:50 p.m., a man approached Goings' teller station "pacing * * * back and forth saying -- telling [her] to give him cash and do it very quickly or he would shoot everyone in the building."  (Tr. Vol. 2 at 265.)  Bah was at the teller station next to Goings, and heard the man say, "[g]ive me the money, give me the money, give me the f'ing money.  If you don't, I'm going to kill everybody in here."  (Tr. Vol. II at 241.)  Goings had trouble getting her machine to dispense cash, so the man stepped over to Bah's teller station.  Susanna Simpkins was a customer standing in front of Bah's teller station at the time of the incident.  Simpkins heard the man say, "you've got five seconds to give me my money or I'm going to shoot this woman."  (Tr. Vol. 2 at 254.)

{¶ 9}  Bah noted that the suspect had his hand in his pockets and that it "looked like he was trying to like scare us with a weapon" or "trying to insinuate he had something on him."  (Tr. Vol. 2 at 241-42.)  Simpkins noted that, while she never saw a gun, the man "kept going for a gun like he had a holster in his back."  (Tr. Vol. 2 at 254.)  Bah took money from her teller machine and gave it to the man.  Goings eventually got her teller machine to work, and she also gave the man money.  After Bah and Goings gave the man money, he fled from the bank.  Bah and Goings then shut down the bank and contacted police.

{¶ 10}  Detective Todd Agee, from the Columbus Police Department, interviewed the witnesses at Chase Bank on November 9, 2018.  Detective Agee confirmed that the witnesses' descriptions of the suspect ranged from a person who was 5'3" to someone who was 6'0", and from someone who was in their 20s to someone who was in their 50s.  However, Bah and Goings both described the suspect as a black male.  Police showed Goings and Bah photo arrays containing appellant's photograph, but neither selected

anyone from the photo arrays. At trial, Bah and Goings stated that they did not recognize anyone in the courtroom from the robbery.

{¶ 11} Bah and Goings identified state's Exhibits H1 and H2 as the surveillance videos from Chase Bank on November 9, 2018, which depicted the robbery. The state played the surveillance videos for the jury. The suspect's face is clearly visible in the video and, although the man's right hand is bandaged, the man's left hand is visible in the videos. Detective Agee identified state's Exhibits H6, H7, and H8 as still shots from the video depicting the robber's left hand. The surveillance videos and still shots demonstrate that the robber had a word beginning with a large, script style "N" tattooed on the top of his left hand and the numbers "1979" tattooed across the fingers of his left hand. (Tr. Vol. 2 at 291.)

{¶ 12} On November 14, 2018, Robyn Stevens and Michael Young were working at a PNC Bank located at 3500 West Broad Street, at the intersection of West Broad Street and Wilson Road. At approximately 10:45 a.m., a man walked into the bank with the hood of his jacket pulled up. Young, the bank's security guard, asked the man to remove his hood. The man complied with Young's request and Young sat down at his desk to complete paperwork. The man then approached Stevens' teller station and "bent down a little bit, got close to the window and said, I have a gun and give me all your money. * * * And he said, do you see that guard right down there? He said, I'll kill him." (Tr. Vol. 2 at 311.) Although Stevens never saw a gun, she noted that the man "did kind of motion towards his pocket of his jacket like * * * to make [her] believe * * * that there was a gun." (Tr. Vol. II at 313.) Stevens handed the man some cash, but the man told her to "give [him] some hundreds." (Tr. Vol. 2 at 311-12.) Stevens gave the man some hundred-dollar bills and he left the bank. Stevens activated her alarm and informed Young she had been robbed.

{¶ 13} When Stevens spoke with police shortly after the incident, she described the suspect as being between 6'0" and 6'2" tall and between 25 and 30 years old. Young told police the suspect was a white male, between 6'1" or 6'2", 25 to 30 years old, thin build, and wearing a black coat. Police showed Stevens and Young photo arrays containing appellant's photograph, but neither selected anyone from the array. At trial, Stevens and Young identified state's Exhibits J1, J2, and J3 as the surveillance videos from PNC Bank on November 14, 2018, which depicted the robbery. The state played the surveillance videos for the jury. The suspect's face is clearly visible in the surveillance videos.

{¶ 14} On November 14, 2018, Tiffany Rhodes was working as a receptionist at Healthy Pets of Westgate ("Healthy Pets"), a veterinary hospital, located on West Broad Street just west from the intersection with Wilson Road. At 10:30 a.m. that day, a man wearing jeans and a black jacket walked into Healthy Pets and asked about vaccines for his dog. Later that day, police showed Rhodes a photo array. Rhodes selected appellant's photo from the array, explaining that he was the person who came into Healthy Pets and asked about vaccines for his dog. At trial, Rhodes identified state's Exhibit L1 as the surveillance video from Healthy Pets on November 14, 2018, which depicted the individual Rhodes identified as appellant entering the store. The state played the surveillance video for the jury.

{¶ 15} Hope Olson, a Columbus Police Crime Laboratory forensic scientist with a specialty in DNA analysis, conducted DNA testing on the items collected from the Heartland Bank parking lot on November 2, 2018. Olson determined that the metal container fragments recovered from the bomb-like device contained DNA which was "interpreted as being a mixture of three individuals, including an unknown major male contributor." (State's Ex. G1.) Following appellant's arrest, officers obtained a DNA sample from appellant. Olson compared appellant's DNA to the DNA on the metal container fragments and concluded that it was "at least 63.1 octillion times more likely if [appellant] is one of the contributors than if this were a mixture of three unknown, unrelated individuals." (State's Ex. G1.) Olson stated that her findings "provide[d] support that [appellant] [was] a contributor" to the DNA found on the metal container fragments. (Tr. Vol. 2 at 427.) The remaining items recovered from the Heartland Bank parking lot contained insufficient DNA to complete the DNA analysis process.

{¶ 16} After the state rested, appellant moved for acquittal under Crim.R. 29. The trial court denied appellant's Crim.R. 29 motion. Thereafter, defendant rested.

{¶ 17} Following its deliberations, the jury returned verdicts finding appellant guilty of the four counts of second-degree felony robbery. The jury also specifically determined that, for each robbery count, appellant threatened to cause serious physical harm to a person. The trial court found appellant guilty of the RVO specifications attached to each count. The court held a sentencing hearing on July 29, 2021, and sentenced appellant to an aggregate prison term of 24 years. The court ordered appellant to pay restitution to

Heartland Bank in the amount of $1,980; to Chase Bank in the amount of $1,000; and to PNC Bank in the amount of $835. On August 24, 2021, the trial court issued a judgment entry memorializing appellant's convictions and sentence.

## II. Assignments of Error

{¶ 18} Appellant appeals, assigning the following errors for our review:

> 1. The trial court erred in overruling Mr. Cunningham's objection to proceeding with trial after the trial judge mistakenly included language regarding prior offenses when summarizing the indictment to the jury.

> 2. The trial court erred in denying Mr. Cunningham's pretrial Motion(s) to Sever.

> 3. The trial court erred in denying Mr. Cunningham's *Motion to Dismiss Repeat Violent Offender Specification* contrary to ORC §2941.149, ORCP 7(B) his right to a fair trial and due process of law as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and Article I, § 10 of the Ohio Constitution.

> 4. The trial court erred when it did not grant Mr. Cunningham's objection to the in-court identification of him by Witness Ramirez.

> 5. The trial court erred in denying Mr. Cunningham's objection to the RVO specification not including the word "recklessly" on the verdict form but still including the work (sic) "recklessly" on the jury instructions.

> 6. The trial court erred in denying Mr. Cunningham's Request for Dismissal pursuant to Rule 29[.]

(Emphasis sic.)

## III. Sixth Assignment of Error - Sufficiency

{¶ 19} For ease of analysis, we address appellant's sixth assignment of error first. Appellant's sixth assignment of error asserts the trial court erred in denying his Crim.R. 29 motion for acquittal.

{¶ 20} Crim.R. 29(A) provides that the court, "on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Thus, "[b]ecause a Crim.R. 29 motion questions the sufficiency

of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.' " *State v. Brown*, 10th Dist. No. 15AP-935, 2016-Ohio-7944, ¶ 27, quoting *State v. Hernandez*, 10th Dist. No. 09AP-125, 2009-Ohio-5128, ¶ 6.

{¶ 21} Sufficiency of the evidence is a legal standard applied to determine whether the evidence introduced at trial is legally adequate to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In determining whether the evidence is legally sufficient, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80.

{¶ 22} Appellant contends the evidence presented at trial was legally insufficient to establish that he was the individual who committed the robbery offenses charged in the indictment. Appellant only challenges the evidence pertaining to his identity as the perpetrator of the offenses; he does not challenge the evidence pertaining to any other element.

{¶ 23} The prosecution must prove every element of the crime charged beyond a reasonable doubt, including the identity of the person who committed the crime. *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 15. *Accord State v. Johnson*, 9th Dist. No. 13CA010496, 2015-Ohio-1689, ¶ 13 (stating that "identity of the perpetrator is an essential element that must be proved beyond a reasonable doubt"). As with any element of a crime, the identity of the perpetrator may be established by direct or circumstantial evidence. *State v. Watkins*, 10th Dist. No. 14AP-807, 2016-Ohio-1029, ¶ 22, citing *State v. Mickens*, 10th Dist. No. 08AP-626, 2009-Ohio-1973, ¶ 18. Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. No. 97228, 2012-Ohio-4047, ¶ 13.

Circumstantial evidence is " 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26, quoting *State v. Bentz*, 2 Ohio App.3d 352, 355 (1st Dist.1981), fn. 6. Direct and circumstantial evidence are of equal evidentiary value. *State v. Robinson*, 10th Dist. No. 17AP-5, 2018-Ohio-1809, ¶ 20, citing *Jenks* at 272.

{¶ 24} Appellant contends the evidence was insufficient to establish his identity as the robber because the witnesses' descriptions of the suspect varied greatly. However, the differences between the witnesses' descriptions of the suspect were simply a matter for the jury to weigh. *See State v. Fletcher*, 2d Dist. No. 2003-CA-62, 2004-Ohio-4517, ¶ 79 (noting that the discrepancies between the witnesses' descriptions of the suspect were "a matter for the jury to weigh"); *State v. Thompson*, 4th Dist. No. 12CA688, 2013-Ohio-2235, ¶ 18 (noting that "[i]t is not reasonable to expect * * * [the witness's] description [of the perpetrator] be perfect"). Notably, Detective Agee and Detective Herman both informed the jury that it was common for witnesses to give varying descriptions of a suspect after a robbery. Although Young described the suspect as white, and the other witnesses described the suspect as black, Young also informed the jury that he "really didn't look that close" at the suspect when he walked into the bank. (Tr. Vol. 2 at 363.)

{¶ 25} The evidence presented at trial was sufficient to establish appellant's identity as the perpetrator of the bank robberies. Olson testified that appellant's DNA was present on the metal container fragments from the bomb-like device used to accomplish the Heartland Bank robbery. Ramirez identified appellant in court as the individual who robbed Heartland Bank on November 2, 2018. "[T]he testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Hood*, 10th Dist. No. 15AP-656, 2015-Ohio-5373, ¶ 11, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 26} The state also presented surveillance video footage and still images from each of the robberies. The videos and images are of good quality and provide a clear, unobstructed view of the robber's face. Accordingly, the jury was able to view the surveillance videos and still shots and determine for themselves whether appellant was the person who committed the bank robberies. *See State v. Doumbouya*, 8th Dist. No. 101482,

2015-Ohio-1640, ¶ 21 (noting that the state "presented the video surveillance tapes, which allowed the jury to view firsthand the similarities between [defendant] and the perpetrator"); *State v. Houston*, 3d Dist. No. 17-10-06, 2010-Ohio-6070, ¶ 33 (noting that the jury was "able to view the video surveillance themselves, and were able to see [defendant] first-hand and determine whether he was the person in the videos"); *State v. Scott*, 8th Dist. No. 112325, 2024-Ohio-975, ¶ 76.

{¶ 27} The surveillance videos and images also depicted the robber's distinctive hand tattoos. The state submitted into evidence pictures of appellant's tattoos taken at the time of his arrest on November 15, 2018. Appellant has the number "1.50" tattooed on the top of his right hand. (State's Ex. A5.) The "50" from appellant's "1.50" tattoo matches the tattoo that is visible on the robber's right hand during the Heartland Bank robbery. (State's Ex. C, A5.) Appellant has a word beginning with a large, script style "N" tattooed on the top of his left hand and the numbers "1979" tattooed across the fingers of his left hand. (State's Ex. A2.) The "N" and "1979" on appellant's left hand match the tattoos which are visible on the suspect's left hand during the Chase Bank robbery. (State's Exs. H1, H2, H7, H8, A2; Tr. Vol. 2 at 294.) *See State v. Stevenson*, 6th Dist. No. WD-22-067, 2023-Ohio-4853, ¶ 86 (finding that the state presented sufficient evidence to establish the defendant's identity as the robber, because the "hotel surveillance video contained images of appellant, including his tattoos, which the appellant himself displayed to the jury during the trial").

{¶ 28} Additionally, Rhodes identified appellant as the individual who walked into Healthy Pets on November 14, 2018 at 10:30 a.m. Healthy Pets and PNC Bank are both located near the intersection of West Broad Street and Wilson Road, and the PNC Bank robbery occurred at 10:45 a.m. on November 14, 2018. Thus, Rhodes' testimony placed appellant in the vicinity of the PNC Bank minutes before the robbery occurred.

{¶ 29} Viewing the evidence in a light most favorable to the prosecution, the evidence was legally sufficient to establish appellant's identity as the person who committed the charged robbery offenses beyond a reasonable doubt. Based on the foregoing, we overrule appellant's sixth assignment of error.

## IV. First Assignment of Error - Prior Convictions

{¶ 30} Appellant's first assignment of error asserts the trial court erred by proceeding to trial after the court mistakenly informed the prospective jury panel that

appellant had prior criminal convictions. At the commencement of the proceedings on May 10, 2021, the court told the prospective jury panel that it would "summarize the indictment" for them. (Tr. Vol 1 at 38.) The court read the first robbery charge and began reading the RVO specification attached to the robbery charge, stating, "[f]urthermore, [appellant] was previously convicted of or pleaded guilty in two or more separate --." (Tr. Vol 1 at 38.) Defense counsel objected.

{¶ 31} The court conferred with counsel outside the jury's presence. The prosecutor informed the court that the state would try the RVO specifications to the court and that the court should not inform the jury of appellant's prior convictions. The court indicated that it would "tell the jurors that [the court] misstated the indictment and [that the court was] going to read it again." (Tr. Vol. 1 at 41.) Defense counsel noted his objection, but also stated he "[thought] we caught it in time." (Tr. Vol. 1 at 42.) The court then addressed the prospective jury panel, explaining that it had "stated the first count in the indictment incorrectly so [the court was] going to restate it to you the correct way." (Tr. Vol. 1 at 42-43.) The court re-read the first robbery offense as charged, without any reference to the RVO specification or appellant's prior convictions.

{¶ 32} Although defense counsel noted his objection to the court's statement, defense counsel did not move to have a new venire impaneled. *See State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, ¶ 90 (explaining that a trial court "retains wide discretion over the conduct and scope of voir dire, including whether to grant a party's motion for a new venire"). Appellant has not provided this court with a transcript of the voir dire proceedings, and appellant fails to demonstrate that the jurors who were ultimately impaneled could not be fair and impartial. *See State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 150, citing *State v. Knight*, 11th Dist. No. 2008-P-0107, 2009-Ohio-4102, ¶ 13 (explaining that "[t]he party challenging the entire jury panel has the burden to show either that the jurors were unlawfully impaneled or that the jurors could not be fair and impartial"); *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 18AP-109, 2019-Ohio-5318, ¶ 24, citing *Studley v. Biehl*, 10th Dist. No. 18AP-11, 2018-Ohio-2274, ¶ 13 (noting that "[b]ecause the appellant bears the burden of showing error by reference to matters in the record, the appellant is under a duty to provide a transcript for purposes of appellate review"); App.R. 9(B)(1) and (3).

{¶ 33} After the court referenced appellant's prior convictions, the court informed the prospective jury panel that it had "incorrectly" stated the first count of the indictment and would "restate" the count "the correct way." (Tr. Vol. 1 at 42-43.) At the conclusion of trial, the court instructed the jury that the "evidence [did] not include the indictment or opening statements or closing arguments of counsel." (Tr. Vol. 3 at 545.) " '[A] jury is presumed to follow instructions of the court.' " *State v. Shipley*, 10th Dist. No. 12AP-948, 2013-Ohio-4055, ¶ 62, quoting *State v. Faris*, 10th Dist. No. 93APA08-1211, 1994 Ohio App. LEXIS 1198, *8-9 (Mar. 24, 1994). *Accord State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 93 (stating that the "jury can be presumed to have followed the court's instructions, including instructions to disregard testimony").

{¶ 34} Additionally, while the court mistakenly informed the prospective jury panel that appellant had two or more unspecified convictions, the court never informed the prospective jury panel that appellant had prior robbery convictions. *Compare State v. Zuern*, 32 Ohio St.3d 56, 59 (1987) (explaining that evidence of other crimes "may be highly prejudicial (Evid.R. 403) when the former crime or act is utilized in a subsequent trial which has, as its central issue, the question of whether the defendant committed the same kind of act"); *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, ¶ 37. Moreover, considering the evidence presented in the case, there is no reasonable possibility that the court's general reference to appellant's prior convictions while reading the indictment contributed to appellant's convictions. *See State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, ¶ 177, quoting *State v. Lytle*, 48 Ohio St.2d 391 (1976), paragraph three of the syllabus (noting that " '[e]rror in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction' "); *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, ¶ 32.

{¶ 35} Based on the foregoing, we overrule appellant's first assignment of error.

**V. Second Assignment of Error - Severance**

{¶ 36} Appellant's second assignment of error asserts the trial court erred by denying his motion to sever the charges. On October 28, 2020, appellant filed a motion asking the court to sever the charges by the dates of the respective incidents. The trial court issued a written decision and entry denying appellant's motion on November 25, 2020. The court concluded that joining the charges would not prejudice appellant, because the

evidence pertaining to each offense was simple and direct and because evidence of one robbery would be admissible at a trial for one of the other robbery offenses.

{¶ 37} Two or more offenses may be charged in the same indictment if the offenses "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A). The law favors joining multiple criminal offenses in a single trial. *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, ¶ 18. Joining multiple offenses in a single trial conserves judicial and prosecutorial time, lessens the not inconsiderable expense of multiple trials, diminishes inconvenience to witnesses, and reduces the possibility of incongruous results in successive trials before different juries. *State v. Walters*, 10th Dist. No. 06AP-693, 2007-Ohio-5554, ¶ 21.

{¶ 38} Notwithstanding the policy favoring joinder, an accused may move, pursuant to Crim.R. 14, to sever counts of an indictment on the grounds that he or she will be prejudiced by the joinder. If it appears that a defendant "is prejudiced by a joinder of offenses * * * in an indictment * * * the court shall order * * * separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14. To obtain severance, the accused bears the burden of "affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." *State v. Torres*, 66 Ohio St.2d 340 (1981), syllabus.

{¶ 39} The state may negate a claim of prejudicial joinder by demonstrating either of the following: (1) that the evidence to be introduced relative to one offense would be admissible in the trial on the other severed offense, pursuant to Evid.R. 404(B) (the "other acts" test); or (2) that, regardless of the admissibility of such evidence, the evidence relating to each charge is simple and direct (the "joinder test"). *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). The tests are disjunctive, therefore, "[i]f the state can meet the joinder test, it need not meet the stricter 'other acts' test." *Id. Accord State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 38 (10th Dist.), citing *State v. Cameron*, 10th Dist. No. 09AP-56, 2009-Ohio-6479, ¶ 35.

**{¶ 40}** Generally, an appellate court will not reverse a trial court's decision to deny severance absent an abuse of discretion. *State v. Lott*, 51 Ohio St.3d 160, 163 (1990); *Torres* at syllabus. However, if a defendant fails to renew their objection to joinder "at the close of the state's evidence or at the conclusion of all of the evidence," they waive "all but plain error." *State v. Williams*, 10th Dist. No. 02AP-730, 2003-Ohio-5204, ¶ 29, citing *State v. Saade*, 8th Dist. No. 80705, 2002-Ohio-5564. Appellant did not renew his objection to the joinder of the offenses at the close of the state's evidence or at the conclusion of all the evidence. Therefore, appellant has waived all but plain error. "Under the plain error test, a reviewing court must consider whether, 'but for the existence of the error, the result of the trial would have been otherwise.' " *Id.*, quoting *State v. Wiles*, 59 Ohio St.3d 71, 86 (1991).

**{¶ 41}** "Evidence meets the simple-and-direct standard if it is straightforward and uncomplicated enough that the jury can segregate the proof required for each offense." *State v. Parham*, 10th Dist. No. 16AP-826, 2019-Ohio-358, ¶ 27, citing *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 52. "The rule seeks to prevent juries from combining the evidence to convict the defendant, instead of carefully considering the proof offered for each separate offense." *Cameron* at ¶ 40, citing *State v. Mills*, 62 Ohio St.3d 357, 362 (1992). *See State v. Tipton*, 10th Dist. No. 04AP-1314, 2006-Ohio-2066, ¶ 31 (noting the evidence "of both the Sunoco and BP robberies was simple and direct, and neither crime was so complex that the jury would have difficulty separating the proof required for each offense").

**{¶ 42}** The evidence in the present case satisfied the simple-and-direct standard. Each robbery presented a simple factual situation, involved separate victims, and took place on different dates. *See Williams* at ¶ 31. Each victim's testimony concerned only the robbery they personally experienced. *See State v. Corker*, 10th Dist. No. 13AP-264, 2013-Ohio-5446, ¶ 23. The state also "presented the evidence in an orderly manner," moving in chronological order from one robbery to the next. *Williams* at ¶ 31. There is nothing in the record indicating that the jury was unable to segregate the proof required for each offense. Furthermore, appellant does not contend that he would have defended the charges differently had the court severed the charges. *See Franklin*, 62 Ohio St.3d at 123.

**{¶ 43}** The trial court also instructed the jury to "consider each count and the evidence applicable to each count separately" and to state their "verdict as to each count

uninfluenced by your verdict as to any other count." (Tr. Vol. 3 at 561.) We presume the jury followed the court's instructions and considered each count separately. *State v. Sullivan*, 10th Dist. No. 10AP-997, 2011-Ohio-6384, ¶ 31, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 86. *See State v. Bass*, 10th Dist. No. 12AP-622, 2013-Ohio-4503, ¶ 23 (finding that the "possibility of jury confusion was extremely remote" where the court instructed the jury to consider the charges separately). Accordingly, the trial court properly found appellant's claim of prejudice negated by the joinder test and denied appellant's motion to sever the charges.

{¶ 44} The trial court also properly found appellant's claim of prejudice negated by the other acts test. Evid.R. 404(B) permits evidence of "other crimes, wrongs, or acts * * * as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," so long as such evidence is not offered to show propensity. "Evidence of crimes may be introduced to prove identity if the defendant ' "committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." ' " *Sullivan* at ¶ 25, quoting *State v. Shedrick*, 61 Ohio St.3d 331, 337 (1991), quoting *State v. Curry*, 43 Ohio St.2d 66, 73 (1975). *See Sullivan* at ¶ 27 (finding that evidence of one robbery would be admissible at defendant's trial for another robbery pursuant to Evid.R. 404(B), because the "robberies occurred at the same Cooper State Bank branch within five days of each other so as to be geographically and temporally linked" and the robberies followed a "similar pattern"); *Tipton*, 2006-Ohio-2066, at ¶ 29; *State v. Payne*, 10th Dist. No. 02AP-723, 2003-Ohio-4891, ¶ 26.

{¶ 45} The robberies in the present case occurred within 12 days of each other at banks located near the intersection of West Broad Street and Wilson Road. During each robbery a man entered a bank during normal business hours, approached the teller's station, and threatened to hurt or kill people if he did not receive money. Although one robbery involved a threat to detonate a bomb and the other two robberies involved threats to shoot people, "admissibility under Evid.R. 404(B) ' "is not adversely affected simply because the other [crimes] differed in some details." ' " *Cameron*, 2009-Ohio-6479, at ¶ 39, quoting *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, ¶ 72, quoting *State v. Jamison*, 49 Ohio St.3d 182, 187 (1990). Notably, the bomb-like device from the Heartland

Bank robbery did not contain any actual explosives, and the suspect never displayed a firearm during the other two robberies. Accordingly, the state could have introduced evidence of robbery at the trial of one of the other robberies pursuant to Evid.R. 404(B).

{¶ 46} Based on the foregoing, we overrule appellant's second assignment of error.

## VI. Third Assignment of Error - Motion to Dismiss RVO Specifications

{¶ 47} Appellant's third assignment of error asserts the trial court erred by denying his pretrial motion to dismiss the RVO specifications. On December 11, 2019, appellant, through his prior trial counsel, filed a motion to dismiss the RVO specifications charged in the indictment. Appellant argued that the indictment failed to allege facts to satisfy the serious physical harm finding required by R.C. 2929.14(B)(2)(b)(iii), and that he did not have prior convictions which would support the RVO specifications.

{¶ 48} Shortly after submitting the December 11, 2019 motion to dismiss, appellant secured new trial counsel. Although there is nothing in the record indicating that appellant withdrew his motion to dismiss the RVO specifications, the state did not submit a memorandum contra the motion and the trial court did not rule on the motion. Because the trial court did not rule on the motion before entering final judgment in the case, we presume the trial court overruled the motion. *See State v. Lowe*, 10th Dist. No. 10AP-584, 2011-Ohio-3996, ¶ 11, citing *Burkart v. Burkart*, 191 Ohio App.3d 169, 2010-Ohio-5363, ¶ 30 (10th Dist.) (explaining that "[w]here a trial court fails to explicitly rule on a motion, we presume that the trial court overruled the motion"); *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998) (noting that "when a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it"); *Huntington Natl. Bank v. Bywood, Inc.*, 10th Dist. No. 12AP-994, 2013-Ohio-2780, ¶ 5.

{¶ 49} A court may not determine that an offender is a RVO unless the indictment "specifies that the offender is a [RVO]." R.C. 2941.149(A). The court must "determine the issue of whether an offender is a [RVO]." R.C. 2941.149(B). *See State v. Brown*, 10th Dist. No. 10AP-836, 2011-Ohio-3159, ¶ 16 (noting that "[i]f an indictment contains a [RVO] specification, it is the court that shall determine the issue of whether the offender is a RVO"). R.C. 2929.01(CC) defines a "repeat violent offender" as a person to whom both the following apply: (1) the person is being sentenced for committing "[a]ggravated murder, murder, [or] any felony of the first or second degree that is an offense of violence," and (2)

"[t]he person previously was convicted of or pleaded guilty to an offense" described above. A robbery conviction under R.C. 2911.02 is an "[o]ffense of violence." R.C. 2901.01(A)(9).

{¶ 50} Once the court determines that a person is a RVO, penalty enhancement is governed by R.C. 2929.14(B). *See Brown* at ¶ 21. R.C. 2929.14(B)(2)(b) provides, in relevant part, as follows:

> The court shall impose on an offender the longest prison term authorized or required for the offense * * * and shall impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if all of the following criteria are met:
>
> (i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.
>
> (ii) The offender within the preceding twenty years has been convicted of or pleaded guilty to three or more offenses described in division (CC)(1) of section 2929.01 of the Revised Code, including all offenses described in that division of which the offender is convicted or to which the offender pleads guilty in the current prosecution and all offenses described in that division of which the offender previously has been convicted or to which the offender previously pleaded guilty, whether prosecuted together or separately.
>
> (iii) The offense or offenses of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the second degree that is an offense of violence and the trier of fact finds that the offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person.

{¶ 51} Thus, pursuant to R.C. 2929.14(B)(2)(b)(iii), before a sentencing court may impose an additional prison term on a RVO convicted of a felony of the second degree, the trier of fact must find that the current second-degree felony offense involved an attempt to cause or a threat to cause serious physical harm to a person or resulted in serious physical harm to a person. *See State v. Payne*, 11th Dist. No. 2004-L-118, 2005-Ohio-7043, ¶ 114 (explaining that, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), the serious physical harm finding under R.C. 2929.14(B)(2)(b)(iii) "must be determined by a jury or admitted by the appellant"); *State*

*v. Davis*, 7th Dist. No. 08 MA 152, 2009-Ohio-5079, ¶ 36; *Brown*, 2011-Ohio-3159, at ¶ 23, fn. 2. *See also State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, at paragraph one of the syllabus (explaining that while the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856 "excised judicial fact-finding from former R.C. 2929.14(D)(2)," *Foster* "did not eliminate the [RVO] specification, as defined in former R.C. 2929.01(DD)").

{¶ 52} Appellant contends that the trial court erred by denying his motion to dismiss the RVO specifications because the indictment "failed to apprise [him] of any factors upon which the [RVO] finding could have been made by the grand jury." (Appellant's Brief at 37.) "An indictment meets constitutional requirements if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' " *State v. Childs*, 88 Ohio St.3d 558, 565 (2000), quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974). *See State v. Sellards*, 17 Ohio St.3d 169, 170 (1985); Crim.R. 7(B). "[A] motion to dismiss an indictment tests the legal sufficiency of the indictment without regard to the quantity or quality of evidence that may be produced by either the state or the defendant." *State v. Parr*, 10th Dist. No. 17AP-782, 2019-Ohio-4011, ¶ 11, citing *State v. Thornsbury*, 4th Dist. No. 12CA9, 2013-Ohio-1914, ¶ 6.

{¶ 53} The indictment alleged that each second-degree felony offense of robbery "involved an attempt to cause or a threat to cause serious physical harm to a person, or resulted in serious physical harm to a person." (Indictment.) The RVO specifications in the indictment tracked the language of R.C. 2941.149(A), stating that the "Grand Jurors further find and specify that [appellant] is a repeat violent offender * * * in that the instant offense involved committing * * * a felony of the first or second degree that is an offense of violence," and that appellant had prior second-degree felony robbery convictions. (*Id.*) The indictment listed appellant's prior robbery convictions. Accordingly, the indictment fairly informed appellant of the elements of the RVO specification and permitted him to plead an acquittal or conviction to the specification. The trial court did not err by overruling appellant's motion to dismiss the RVO specifications.

{¶ 54} Appellant further asserts that the state failed to "disclose any evidence meeting those requirements set forth in ORC [section] 2929.14[(B)(2)](b)(iii)." (Appellant's Brief at 36.) However, the state presented evidence demonstrating that

appellant threatened to either detonate a bomb or shoot people during each of the robberies. This evidence was sufficient to support the R.C. 2929.14(B)(2)(b)(iii) finding that appellant threatened serious physical harm to persons during the robbery offenses.

{¶ 55} Appellant lastly notes that he preserved his right to object to the use of any certified copies of prior judgments of convictions in his December 11, 2019 motion. (Appellant's brief at 38.) At trial, however, appellant stipulated that he had prior convictions for second-degree felony robbery in Franklin C.P. case Nos. 08CR-3709, 08CR-3705, 94CR-2359, 94CR-1827, and 94CR-29. A trial court "ha[s] no need to conduct fact-finding in connection with [R.C. 2929.01(CC)]" when a party stipulates to their prior convictions. *Hunter*, 123 Ohio St.3d at ¶ 33. Because appellant stipulated to his prior robbery convictions, he cannot now claim that the trial court erred by accepting his stipulation. *State v. McClendon*, 10th Dist. No. 11AP-354, 2011-Ohio-6235, ¶ 37 (noting that under the invited error doctrine, "a party cannot claim that a trial court erred by accepting the party's own stipulation").

{¶ 56} Based on the foregoing, we overrule appellant's third assignment of error.

## VII. Fourth Assignment of Error – In-Court Identification

{¶ 57} Appellant's fourth assignment of error asserts the trial court erred by admitting Ramirez's in-court identification of him as the individual who robbed Heartland Bank on November 2, 2018. Appellant contends that Ramirez's in-court identification was unreliable because she did not select appellant's photograph from the photo array police showed her on November 13, 2018. (Appellant's brief at 39.)

{¶ 58} The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice. *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 43, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). However, defense counsel did not object to Ramirez's in-court identification of appellant. As such, we review the court's admission of Ramirez's identification testimony for plain error. *State v. Pierce*, 10th Dist. No. 02AP-1133, 2003-Ohio-4179, ¶ 63; *State v. Berry*, 10th Dist. No. 18AP-9, 2019-Ohio-3902, ¶ 26; *State v. Shelton*, 1st Dist. No. C-170547, 2018-Ohio-3895, ¶ 33. An alleged error amounts to plain error only if, " 'but for the error, the outcome of the trial

clearly would have been otherwise.' " *Yarbrough*, 2002-Ohio-2126, at ¶ 108, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus.

{¶ 59} Unreliable identification testimony is subject to exclusion under the Due Process Clause of the United States Constitution. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). It is the likelihood of misidentification which violates a defendant's right to due process. *Id.* The critical inquiry is whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). The factors to consider in determining whether identification testimony is reliable include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil* at 199-200. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* at 114.

{¶ 60} "[V]iewing the defendant when he is on trial, is an impermissibly suggestive procedure." *State v. Mikolaj*, 7th Dist. No. 05-MA-157, 2007-Ohio-1563, ¶ 13, citing *State v. Marshall*, 136 Ohio App.3d 742, 750 (8th Dist.2000). Accordingly, an in-court identification is only admissible if, "under all the circumstances, it appears that the identification [was] 'the result of observations at the time of the crime' and, therefore, reliable." *Id.*, quoting *State v. Davis*, 76 Ohio St.3d 107, 112 (1996). *Accord State v. Lathan*, 30 Ohio St.2d 92 (1972), paragraph one of the syllabus.

{¶ 61} Ramirez explained that, although the robbery lasted only 25 seconds, she got "a good look" at the suspect during the incident. (Tr. Vol. 1 at 124.) The Heartland Bank robbery occurred in a well-lit bank in the middle of the day. The robber's face was unobstructed and Ramirez had a brief conversation with the robber when he threatened to detonate a bomb and demanded money. Ramirez provided the police with a description of the suspect after the incident and Ramirez told police that she "definitely thought she could ID the person." (Tr. Vol. 1 at 209-10.) When Ramirez identified appellant at trial, she stated there was no question in her mind that appellant was the individual who robbed her on November 2, 2018. Accordingly, because it appears that Ramirez's in-court identification

of appellant was the result of her observations during the robbery, the trial court did not plainly err by admitting the identification testimony. *See Mikolaj* at ¶ 15-16.

{¶ 62} Additionally, defense counsel thoroughly cross-examined Ramirez regarding the apparent contradiction between her in-court identification of appellant and the fact that she did not select appellant's photograph from the photo array she viewed on November 13, 2018. *See State v. Berry*, 2019-Ohio-3902, at ¶ 26. Ramirez admitted on cross-examination that her memory of the incident was probably better closer to November 2, 2018 than it was at the time of trial nearly two and one-half years after the robbery occurred. Thus, the jury was aware that Ramirez failed to select appellant's photograph from the photo array and was able to consider this fact when weighing the credibility of Ramirez's identification testimony. *See State v. Reed*, 10th Dist. No. 08AP-20, 2008-Ohio-6082, ¶ 48 (stating that "the credibility of witnesses and their degree of certainty in identification are matters affecting the weight of the evidence"); *State v. Coleman*, 10th Dist. No. 99AP-1387, 2000 Ohio App. LEXIS 5386, *7 (Nov. 21, 2000), quoting *Manson*, 432 U.S. 98 at 116.

{¶ 63} Moreover, even absent Ramirez's in-court identification, the remaining evidence overwhelmingly identified appellant as the perpetrator of the Heartland Bank robbery. *See State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78, citing *Chapman v. California*, 386 U.S. 18 (1967) (stating that even "[a] constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt"). As noted, the evidence demonstrated that appellant's DNA was on the metal container fragments from the bomb-like device used during the Heartland Bank robbery, the surveillance video from Heartland Bank clearly depicted the robbery, and appellant's right-hand tattoo matched the robber's right-hand tattoo which was visible during the robbery.

{¶ 64} Based on the foregoing, we overrule appellant's fourth assignment of error.

## VIII. Fifth Assignment of Error – Reckless Importation Statute

{¶ 65} Appellant's fifth assignment of error asserts the trial court erred by failing to include the mental state of recklessness with the RVO special finding on the verdict forms, and by instructing the jury that the robbery offenses required proof of the mental state of recklessness. The trial court instructed the jury that, to find appellant guilty of robbery, they needed to find that appellant, "in attempting or committing a theft offense upon [the

bank], or in fleeing immediately after the attempt or offense, did recklessly inflict, attempt to inflict or threaten to inflict physical harm on [the teller]." (Tr. Vol. 2 at 551.) The verdict forms asked the jury to determine whether appellant "threaten[ed] to cause serious physical harm to a person" during the commission of the robbery offense. (Verdict Forms.)

{¶ 66} The state charged appellant with robbery in violation of R.C. 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another." A theft occurs when a person, "with purpose to deprive the owner of property or services, * * * knowingly obtain[s] or exert[s] control over either the property or services * * * [w]ithout the consent of the owner." R.C. 2913.02(A)(1). Thus, while the mental states of "purpose[ly]" and "knowingly" attach to the theft element of robbery, R.C. 2911.02 does not identify a mental state for the physical harm element of robbery.

{¶ 67} R.C. 2901.21 sets forth basic requirements for criminal liability. In *State v. Tolliver*, 140 Ohio St.3d 420, 2014-Ohio-3744, the court analyzed former R.C. 2901.21(B), which provided as follows:

> When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense.

*Tolliver* at ¶ 14.

{¶ 68} Because former R.C. 2901.21(B) applied only when the "section defining an offense [did] not specify any degree of culpability," the *Tolliver* court concluded that, "[i]f the section already required proof of a culpable mental state for any element of the offense in any division or subdivision, R.C. 2901.21(B) does not apply." *Id*. at ¶ 23. The court further determined that, because R.C. 2911.02 defines "every robbery to include the culpable mental states of the predicate theft offense," former R.C. 2901.21(B) could not import the mental state of recklessness to the force element of robbery contained in R.C. 2911.02(A)(3). *Id*. *See* R.C. 2911.02(A)(3) (providing that "[n]o person, in attempting or

committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * [u]se or threaten the immediate use of force against another").

{¶ 69} Shortly after *Tolliver*, the General Assembly amended R.C. 2901.21 in 2014 Am.S.B. No. 361. The statute now provides, in relevant part, as follows:

> (B) When the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. The fact that one division of a section plainly indicates a purpose to impose strict liability for an offense defined in that division does not by itself plainly indicate a purpose to impose strict criminal liability for an offense defined in other divisions of the section that do not specify a degree of culpability.
>
> (C)(1) When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly.
>
> (2) Division (C)(1) of this section does not apply to offenses defined in Title XLV of the Revised Code.
>
> (3) Division (C)(1) of this section does not relieve the prosecution of the burden of proving the culpable mental state required by any definition incorporated into the offense.

{¶ 70} During the parties' discussions regarding the jury instructions in the present case, the prosecutor noted that, following *Tolliver* and the amendment to R.C. 2901.21, it was "not entirely clear if the new statute would import recklessness into robbery." (Tr. Vol. 2 at 454.) However, the prosecutor stated that, out of an "abundance of caution," the state proposed including the mental state of recklessness with the physical harm element of robbery in the jury instructions. (Tr. Vol. 2 at 455.) Defense counsel argued that the mental state of knowingly should apply to the physical harm element of robbery, because the predicate theft offense of robbery required the mental state of knowingly. The court indicated that it would include a recklessness mens rea with the physical harm element of robbery. Defense counsel objected.

{¶ 71} Generally, a trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 127, citing *Clark v. Grant Med. Ctr.*, 10th Dist. No. 14AP-833, 2015-Ohio-4958, ¶ 50. However, when a jury instruction contains an incorrect statement of the law, a reviewing court applies a mixed de novo and abuse of discretion standard of review. *Id.*, citing *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 21. "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.' " *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995), quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208 (1990).

{¶ 72} Appellant contends the trial court erred by instructing the jury that the mental state of recklessness applied to the physical harm element of robbery. Appellant states that "[r]obbery has both a knowingly and purposeful mental element" in the predicate theft offense and contends that "former case law stated whatever the underlying offense of the robbery was, that mental state transferred to the rest of the elements." (Appellant's Brief at 47.) However, appellant has not provided this court with any authority to support his contention. *See* App.R. 16(A)(7). In *Tolliver*, the court specifically held that "the text of R.C. 2911.02" plainly did "not explicitly or impliedly require proof of any culpable mental state for the force element in subdivision (A)(3)." *Tolliver* at ¶ 8. *See also In re Bowers*, 11th Dist. No. 2002-A-0010, 2002-Ohio-6913, ¶ 31. The text of R.C. 2911.02 similarly does not require proof of any culpable mental state for the physical harm element of robbery in subdivision (A)(2).

{¶ 73} *Tolliver* concluded that, because former R.C. 2901.21(B) provided for importation of a recklessness mens rea "[w]hen the *section defining an offense* * * * neither specifie[d] culpability nor plainly indicate[d] a purpose to impose strict liability," R.C. 2901.21(B) could not apply to a section if "any element of the offense in any division or subdivision" required proof of a culpable mental state. (Emphasis added.) *Tolliver* at ¶ 15. *See also State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, ¶ 31. Following the amendment to R.C. 2901.21, the statute now provides, in pertinent part, that "[w]hen language *defining an element of an offense* that is related to knowledge or intent or to which

mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, *the element of the offense* is established only if a person acts recklessly." (Emphasis added.) R.C. 2901.21(C)(1).

{¶ 74} Thus, current R.C. 2901.21(C)(1) applies to the elements of an offense, rather than the entire section defining an offense. *See State v. Ewing*, 9th Dist. No. 29685, 2021-Ohio-2220, ¶ 35, quoting R.C. 2901.21(C). R.C. 2901.21(C)(1) may import the mental state of recklessness to an element of an offense when the element does not specify culpability or plainly indicate a purpose to impose strict liability, and the element either relates to "knowledge or intent" or is an element "to which mens rea could fairly be applied." *See also State v. Jordan*, 89 Ohio St.3d 488, 493 (2000) (noting that "different elements of the same offense can require different mental states"). The physical harm element of robbery does not specify a culpable mental state, is an element "to which mens rea could fairly be applied," and does not "plainly indicate[] a purpose to impose strict liability." R.C. 2901.21(C)(1). Therefore, pursuant to R.C. 2901.21(C)(1), the trial court did not err by instructing the jury that appellant had to commit the physical harm element of robbery with the mental state of recklessness. *See State v. Morris*, 1st Dist. No. C-150421, 2016-Ohio-5490, ¶ 11, citing R.C. 2911.01(A)(3) and 2901.21(C)(1).

{¶ 75} Appellant further contends that the trial court erred by not including the mental state of recklessness with the RVO specification special finding contained on the verdict forms. Following the parties' discussions of the jury instructions, defense counsel asked whether the mental state of recklessness should accompany the R.C. 2929.14(B)(2)(b)(iii) serious physical harm finding. The prosecutor responded that R.C. 2901.21 could not import a recklessness mens rea into the RVO specification, because R.C. 2901.21 did not apply to specifications.

{¶ 76} R.C. 2901.21(C)(1) applies to "language defining an element of an *offense*." (Emphasis added.) *See* R.C. 2901.03(B) (defining an offense). The serious physical harm special finding required by R.C. 2929.14(B)(2)(b)(iii) pertains only to the RVO penalty enhancement specification. *State v. Miller*, 6th Dist. No. L-08-1314, 2009-Ohio-3908, ¶ 11 (noting that "a penalty enhancement specification is not an offense"). *Accord State v. Hendrix*, 11th Dist. No. 2011-L-043, 2012-Ohio-2832, ¶ 58 (holding that "a penalty enhancement specification is not an offense, by itself, but simply serves to increase the

penalty of the underlying crime"). *See also State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, at paragraph one of the syllabus (holding that a "firearm specification is a penalty enhancement, not a criminal offense"); *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 38 (same). Penalty enhancement specifications do not require proof of a culpable mental state separate from the commission of the predicate offense. *Hendrix* at ¶ 59; *State v. Noor*, 10th Dist. No. 13AP-165, 2014-Ohio-3397, ¶ 51, fn. 2.

**{¶ 77}** Accordingly, because the RVO specification was not an offense, R.C. 2901.21(C)(1) could not import the mental state of recklessness into the specification. Therefore, the trial court did not err by refusing to include a recklessness mens rea with the RVO specification special finding on the verdict forms.

**{¶ 78}** Based on the foregoing, we overrule appellant's fifth assignment of error.

## IX. Conclusion

**{¶ 79}** Having overruled appellant's six assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

_____